STATE *vs.* EDWARD S. HULL AND ANOTHER.

The keeper of a poor-house has a right to maintain order in his establishment, and for that purpose may restrain its inmates from committing acts of mischief by a reasonable amount of preventive force, where other means are ineffectual.

But he has no right to confine and chain a pauper, although of a turbulent character, where there is no such impending danger from him as to make it necessary.

And it is no justification for such an act on the part of the keeper that the selectmen of the town had directed him to restrain the pauper if necessary.

INFORMATION for an assault and battery upon one Philo Foot, tried to the jury, on a plea of not guilty, in the superior court in Fairfield county, before *Pardee, J.*

State *v.* Hull.

On the trial the attorney for the state offered evidence to prove, and it was not denied, that on the 27th day of February, 1866, Philo Foot, then seventy-nine years of age, was, and for the three years preceding had been, a pauper of the town of Danbury ; that Hull, one of the defendants, was the keeper of the paupers of the town, under a contract with the selectmen ; that Webb, the other defendant, was in the service of Hull, as his hired servant; and that Foot was an inmate of the house where Hull kept the paupers.   The attorney for the state also offered evidence to prove, and it was not denied, that on that day Hull seized Foot while sitting in a lower room of the house, and engaged in reading, and by force pushed him up stairs into a chamber ; that Hull, leaving Foot in the chamber, went down stairs and soon returned with an iron trace-chain, padlock and staple, accompanied by Webb; that Hull then seized Foot, and threw him upon a bed and held him there, while Webb, by his order, fastened the chain upon the legs of Foot; that Hull locked the chain to an iron staple which he had driven into the floor of the chamber so as to fasten Foot to the staple ; that Hull and Webb then went away, leaving Foot chained to the staple, and fastening the chamber door behind them.

The defendants then offered, by way of justification of the assault, the following evidence :—That about one year before, Foot, then a pauper in the house, brought into it two bottles of rum, and gave a part of it to some of the inmates of the house, whereby they became drunk, and disturbed the house, Foot himself being also drunk ; that at that time Hull made search for the rum and found a portion of it concealed in Foot's bed, and while attempting to destroy it was attacked by Foot, and was then compelled to chain him ; and that he then told him that he should chain him again if he should repeat such conduct.   Also that at different times prior to the assault complained of, Foot, while an inmate of the house, had been very turbulent and unruly ; that he had repeatedly, in the absence of Hull, gone into the kitchen and kicked over the victuals which were being prepared for the inmates ; that he had told the inmates not to keep their rooms

clean, and not to empty their chamber-pots, and that Hull was obliged to do it for them. Also that, about a week before the assault complained of, while Hull was absent on business in the city of New York, Foot had created such disturbance in the kitchen as for some days to render it almost impossible to carry on the work of cooking there, and repeatedly drove the cook out of the kitchen. Also that he was a man of turbulent character and temper, and could not be restrained by ordinary means. Also that the selectmen of the town had orally directed Hull to restrain and confine him, if it should at any time become necessary. All of which evidence was rejected by the court.

The jury rendered a verdict of guilty against both of the defendants, and they moved for a new trial for error in the rejection of the evidence offered by them.

*White* and *Taylor*, in support of the motion.

*Carter*, State's Attorney, and *Booth*, contra.

McCURDY, J. That the keeper of an almshouse has a right to maintain order in his establishment, and for that purpose to restrain its inmates from committing acts of mischief by a reasonable amount of preventive force when other means are ineffectual, is beyond a doubt. The question is whether in this case the evidence tends to prove the existence of such an emergency at the time of the wrongs complained of as would justify the kind and degree of violence resorted to by the defendants.

It appears that Foot was sitting in a lower room of the house reading. He was in a place where he had a right to be and was doing what he had a perfect right to do. His occupation was especially peaceable, and he seems to have used no word or act of provocation. In this situation the defendants pushed him up stairs with force and fastened him in his chamber. Upon being told by him that he could not be confined in this manner, they threw him down, fastened an iron chain around his legs, and locked it with a padlock to a

staple driven into the floor. They then went away, locking the door of the room and leaving him alone, a man seventy-nine years old, chained down as though he had been a wild beast.

Now what justification is offered for this high-handed proceeding? The excuse given at the time, so far as any reason was expressed, was that the old man had circulated stories of Hull's being drunk. It is no where shown when this was done by him, or whether it was done at all, or whether the stories if circulated were true or false. The most malicious slander is no excuse for an assault and battery. So far then nothing looks like a justification.

But evidence was offered to prove that about a year before the occurrence complained of Foot brought rum into the house and got drunk, and made others drunk, and hid the rum, and upon an attempt being made to destroy it he attacked the keeper, and that he then required to be restrained by chaining; that he was of a turbulent character and temper, not to be restrained by ordinary means; that on divers occasions he had been turbulent and unruly, and had been guilty of wanton and destructive acts in the kitchen, and had obstructed the work in the manner particularly specified in the motion.

The reply is that these occurrences had taken place long before the assault charged, and had no connection with it, and that they do not tend to show any such impending danger from him at the time of the assault as made it necessary to confine and chain him.

It was further offered to be proved that the selectmen of the town had directed Hull to restrain and confine Foot if necessary. In the first place it is evident that no necessity existed; and secondly, the selectmen had no authority to give such directions. It was held in *Forde* v. *Skinner*, 4 Car. & Payne, 239, that cutting off the hair of a parish pauper by the parish officers against her will was a battery. The town may establish a poor-house and make by-laws relative to the persons to be admitted into it and for the well ordering and government thereof, liable to be repealed by the superior court. Gen. Statutes, p. 622, sec. 27. But the town had not

acted in the matter and had made no rules for a violation of which this barbarous discipline was inflicted.

A new trial is not advised.

In this opinion the other judges concurred.